UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRIANNA CONNER-WASHINGTON,

                Petitioner,

v.                                                     Case No. 22-cv-11931

JEREMY HOWARD,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

On August 18, 2022, Petitioner Brianna Conner-Washington, a prisoner incarcerated in the Michigan Department of Corrections ("MDOC"), filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) On February 14, 2020, she was convicted after a jury trial in the Macomb Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317. (ECF No. 6-9, PageID.1090–92.) On September 17, 2020, the trial court subsequently sentenced Petitioner to an 18-year minimum to 50-year maximum term of imprisonment. (ECF No. 6-11, PageID.1101, 1114.)

The habeas petition raises three claims challenging Petitioner's state court conviction: (1) the trial court erred in denying Petitioner's request to admit her entire 3½-hour video recorded statement to police; (2) the prosecutor presented insufficient evidence to negate Petitioner's self-defense theory; and (3) a statement made by the trial court during defense counsel's closing argument removed an element of the offense from the jury's consideration. Because none of the claims merit habeas relief, the court will deny the petition and further deny a certificate of appealability.

1

## I.  BACKGROUND

The Michigan Court of Appeals thoroughly summarized the facts of Petitioner's trial in its opinion affirming her conviction. *See People v. Conner-Washington*, No. 354941, 2021 WL 6066789, at *1–5 (Mich. Ct. App. Dec. 21, 2021); ECF No. 6-12. In brief outline, the charges against Petitioner arose from the stabbing death of her former boyfriend, Maurice Carpenter. (ECF No. 6-12, PageID.1121.)

Social media posts and text messages between Petitioner and Carpenter on the date of the incident were admitted into evidence at trial. (ECF Nos. 6-6, 6-7, 6-8.) During the evening of March 8, 2019, Carpenter posted a video on social media depicting himself with another female companion. (ECF No. 6-12, PageID.1121.) This resulted in an angry exchange of texts between Petitioner and Carpenter, ending with Petitioner telling Carpenter that she was on her way to his residence, and that she "wasn't playin'." (Id. at PageID.1122.) Petitioner also called Carpenter's roommate, Daviyon Gordon. (Id.) Gordon testified that Petitioner told him that she was coming over "with all the smoke," which he understood to mean that she was planning to hurt or kill Carpenter. (ECF No. 6-7, PageID.666–67.)

About ten minutes later, at around 11:00 p.m., Petitioner arrived and met Carpenter outside his residence. (ECF No. 6-12, PageID.1122.) Carpenter's other roommate, Ryan Pitts, heard the two arguing outside. (Id.) Gordon, who also stayed inside, thought it sounded like things had calmed down until he heard someone gasping for air. (Id.) Gordon looked out of the window and saw Petitioner's car speed off. (Id.)

Minutes later, Petitioner arrived with Carpenter at a nearby hospital. (ECF No. 6-12, PageID.1123.) She first told employees at the hospital that Carpenter attacked her

2

and that someone else must have stabbed him between the time she briefly left and returned. (Id.) She later said that maybe Carpenter had been cut by the sharp edge of her car door. (Id.) Petitioner left the hospital shortly before Carpenter died from a single penetrating stab wound to the abdomen. (Id.) The puncture severed veins located in front of Carpenter's spine, causing him to bleed-out into his abdominal cavity. (Id.)

Police officers quickly identified Petitioner, who was arrested and agreed to make a statement. (ECF No. 6-12, PageID.1123.) The 3½-hour interview was videotaped. (Id.) Petitioner initially claimed that Carpenter attacked her, she left the scene, and then she returned to find that he had been stabbed. (Id. at PageID.1124.) Over the course of further questioning, Petitioner altered her account several times. (Id. at PageID.1124–25.) By the end of the interview, she admitted to stabbing Carpenter with a folding knife when he grabbed her by the hair and pushed her towards her car. (Id. at PageID.1125.) A physical examination at the police station revealed that Petitioner had a small bruise above her right eye and another one on the left side of her neck. (Id.)

De'aries Conner testified for the defense that in February of 2019, she saw Carpenter attack Petitioner, and it looked like he was trying to hit her. (ECF No. 6-8, PageID.989–90.) Another defense witness, Jayda Dukes, saw Carpenter smack Petitioner on the face and pull her hair in January of 2019. (Id. at PageID.998–1000.) Finally, Carpenter's two roommates testified that Petitioner and Carpenter had a toxic relationship, but they did not witness any physical violence. (ECF No. 6-7, PageID.661, 687–88, 697–98, 737–38, 754–55, 759–60.) The defense theory was that the prosecutor had not disproven self-defense or alternatively that the homicide was at most manslaughter because it was performed in the heat of passion. (ECF No. 6-6,

3

PageID.636; ECF No. 6-8, PageID.1034–54.) The jury rejected the arguments and found Petitioner guilty of second-degree murder. (ECF No. 6-9, PageID.1088–92.)

Following her conviction and sentencing, Petitioner filed an appeal of right. (ECF No. 6-12, PageID.1139–41.) Her appellate attorney filed a brief on appeal that raised two claims:

> I. Trial court's erroneous evidentiary rulings denied the Defendant-Appellant a fair trial.
>
> II. Verdict of guilty based upon insufficient evidence constituted the denial of the due process of law.

(Id. at PageID.1205–57.) Petitioner also filed her own supplemental pro se brief that raised an additional claim:

> III. Ms. Conner-Washington was denied her state and federal constitutional rights to a jury trial where the court removed the issue of which mens rea the defendant possessed from the jury's consideration.

(Id. at PageID.1164–1176.) The Michigan Court of Appeals affirmed. *Conner-Washington*, 2021 WL 6066789. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same three claims. (ECF No. 6-13, PageID.1340–76.) The Michigan Supreme Court denied the application by standard form order. *People v. Conner-Washington*, 975 N.W.2d 465 (Mich. 2022) (Table).

## II.  STANDARD

Under 28 U.S.C. § 2254(d) a federal district court "shall not [ ] grant[ ] [a habeas petition] with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . ; or (2) resulted in a decision that was based

4

on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id*. at 413. "As a condition for obtaining habeas corpus from a federal court, [the petitioner] must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Section 2254(d) is a "purposefully demanding standard," *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc), and it requires that state court determinations "be given the benefit of the doubt," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

### III.  DISCUSSION

### A. Alleged Evidentiary Rule Violations

Petitioner's first claim asserts that the trial court erred when it refused defense counsel's request to admit Petitioner's entire videotaped statement into evidence after the prosecutor elicited testimony from the interviewing police officer as to specific

5

admissions Petitioner made during the interview. (ECF No. 1, PageID.14–15, 51–64.) In both state court and here, Petitioner asserts that the ruling violated Michigan's rule of completeness, MICH. R. EVID. 1002, and the best-evidence rule, MICH. R. EVID. 106. (Id.) She also asserts that the ruling rendered her trial fundamentally unfair in violation of due process. (Id.)

With respect to the alleged violations of state evidentiary law, the claim is not cognizable. A contention that a state trial court violated Michigan's evidentiary rules is not a cognizable claim on federal habeas review, *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009), because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Even if cognizable, the state court determined as a matter of state law that Petitioner's proffered evidence was not admissible under the rule of completeness or the best evidence rule. *Conner-Washington*, 2021 WL 6066789, at *5-8. The state court's interpretation of state law binds this Court on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Turing to the due process claim, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). A defendant still must comply, however, with the state's established rules of procedure and evidence that are designed to assure both fairness and reliability. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). A trial court's decision to exclude evidence violates a defendant's right to present a defense where the exclusion denies the defendant a fundamentally fair trial. *Boggs v. Collins*, 226 F.3d 728, 743 (6th Cir. 2000).

Petitioner cites no clearly established Supreme Court law holding that, as a matter of fundamental fairness, if a prosecutor offers part of defendant's statement to police, the defendant is entitled to admission of the entire statement. "[I]f there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)).

Moreover, this is not a case where the defendant was prevented by an evidentiary ruling from offering her own version of events to the jury by testifying on her own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987). While the ruling prohibited her from presenting her out-of-court exculpatory versions of the incident while not being subject to cross-examination, Petitioner was still afforded the right to offer her version of events by taking the stand. Petitioner, however, chose to waive her right to testify in her own defense. (ECF No. 6-8, PageID.1007). The trial court's ruling did render Petitioner's trial fundamentally unfair. Thus, Petitioner's first claim is without merit.

### B. Sufficiency of the Evidence Negating Self-Defense

Petitioner's second claim asserts that the prosecutor failed to prove beyond a reasonable doubt that she did not act with lawful self-defense when she stabbed Carpenter. (ECF No. 1, PageID.15–16, 64–71.) The Michigan Court of Appeals found that, when viewed most favorably to the prosecutor, sufficient evidence was presented to negate self-defense. *Conner-Washington*, 2021 WL 6066789, at *8-11. Though the state court rejected the claim on the merits, Petitioner cannot demonstrate entitlement to habeas relief as a matter of law because her claim cannot be supported by clearly established Supreme Court precedent.

7

Under Michigan law, a person may use deadly force to protect herself or others. *See People v. Dupree*, 788 N.W.2d 399, 407 (Mich. 2010). The prosecution need not disprove self-defense beyond a reasonable doubt until the defendant establishes a prima facie case at trial. *Id*. at 410. Nevertheless, self-defense is an affirmative defense under Michigan law, and it "does not negate specific elements of the crime." *People v. Reese*, 815 N.W.2d 85, 101 n.76 (Mich. 2012) (quoting *Dupree*, 788 N.W.2d at 405 n.11).

Because self-defense is not the negation of an element of the offense, whatever the requirements under state law, "the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt." *Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) (citing *Martin*, 480 U.S. at 233, 234); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to "elements of the crimes as defined by the state." (citing *Engle v. Isaac*, 456 U.S. 107 (1982)). Accordingly, the due process guarantee of sufficient evidence is not implicated by Petitioner's claim because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused committed the requisite elements of the crime. *Richardson v. Lebanon*, 384 F. App'x 479, 482 (6th Cir. 2010) (quoting *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999)). Therefore, Petitioner's second claim fails as a matter of law.

However, even if Petitioner's claim were cognizable, she would not be entitled to relief. Under section 2254(d), a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018)(citing *Brown v. Konteh*, 567 F.3d 191, 204 (6th Cir. 2009)), as the

"federal court may . . . overturn a state court decision . . . only if the state court decision was objectively unreasonable," *Tackett*, 956 F.3d at 367. *See also Smith v. Nagy*, 962 F.3d 192, 205 (2020) (explaining that the habeas court may not "reweigh the evidence or reassess the credibility of witnesses" (citing *Brown*, 567 F.3d at 205)).

The Michigan Court of Appeals' decision was not objectively unreasonable. When viewed most favorably to the prosecution, the evidence indicated that Petitioner was angered by Carpenter's posting of a video showing himself with another woman. Petitioner reacted by warning Carpenter that she was coming over to his residence, and she indicated to his roommate that she intended to harm or kill him. Though the evidence suggested that there was some form of physical confrontation at the scene, Petitioner's final statement to the police indicated that she swung the folding knife at Carpenter when he was pushing her towards her car or was pulling on her hair. Were it to view the evidence presented in a light most favorable to the prosecution, as it ultimately did here, the jury easily could have found that Petitioner was not in fear for her life or great bodily harm when she intended to use deadly force against the victim. The rejection of this claim by the Michigan Court of Appeals was not objectively unreasonable. Thus, even if cognizable, Petitioner's second claim still fails.

### C. Trial Court's Ruling During Defense Counsel's Closing Argument

Petitioner's third claim asserts that she was denied her Sixth Amendment right to have the jury determine her guilt by virtue of a ruling made by the trial court during defense counsel's closing argument. (ECF No. 1, PageID.16–17, 72–81.) Petitioner claims that the ruling removed the *mens rea* element of second-degree murder from consideration by the jury. (Id.) The claim is based on the following exchange:

9

[Defense counsel]: But, if for some reason, we all being human, you just don't feel comfortable with self-defense, I think the only other option would be to find her guilty of manslaughter. Because, that's ... when something happens in a heated – then, you're going to get instructions about that. That's exactly what manslaughter is, [l]adies and [g]entlemen, is in the heat of emotion, in the heat of anger or something, you do something and like wow, that's not what you intended to do, and so forth. There's not one thing here that points that [sic] [defendant] intended to seriously hurt [the victim], or put his life in jeopardy. Because, if you think so, she could've sliced him across his neck.

She could've tried to hit him in the heart. As I indicated earlier, she could've hit him in his privates, because she was mad about his allegedly stepping out or whatever. This is probably one of the most benign places that she could've hit anybody. Still should not have done it, and whatever happened. But, that's basically where we're at.

Keep one other thing in mind. In this very, very same courthouse, not this particular courtroom, there was a gentleman that chopped up his wife, cut off her head, took her body parts, went out –

[The prosecutor]: Your Honor, I'm going to have to object. This is improper argument.

The court: Sustained.

[Defense counsel]: May I just conclude the legal point?

The court: Yes.

[Defense counsel]: He was found guilty of second-degree murder –

The court: Well – no.

[Defense counsel]: – you (inaudible).

The court: [Defense counsel], I thought you meant your legal point, not someone else's.

[Defense counsel]: Okay. All right. Well, I'm going to back off of that.

The court: Disregard any other case.

(ECF No. 6-8, PageID.1051–52.)

10

Under clearly established Supreme Court law, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1992) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same). If Petitioner fails to meet this burden, she fails to show that the jury instructions were contrary to federal law. *Id*.

Here, Petitioner argues that by prohibiting defense counsel from comparing her case to another murder case tried in the same courthouse, the court effectively prevented defense counsel from arguing that she did not exhibit the *mens rea* for murder, removing the issue from the jury's consideration. The Michigan Court of Appeals did not accept this characterization of the record by Petitioner:

> We do not share defendant's reading of this exchange. The only argument that the trial court directed the jury to disregard was defense counsel's comparison to an unrelated murder case, not defense counsel's argument related to why the jury should return a verdict of manslaughter if it did not accept defendant's self-defense claim.
>
> Moreover, the trial court clearly instructed the jury that the lawyers' arguments were not evidence, but were "only meant to help [it] understand the evidence and each side's legal theories." The trial court also instructed the jury that it was the trial court's job, not the lawyers' job, to instruct the jury on the law, stating: "If a lawyer says something different about the law, follow what I say." Once again, the trial court's instructions clearly distinguished second-degree murder and manslaughter. And, even if defendant had actually presented us with a concrete example of the prosecutor's alleged confusion of mens rea and actus reus, that confusion would ultimately be harmless in light of the trial court's instructions to the jury, which the jury is presumed to have followed. *People v. Lane*, 308 Mich. App. 38, 57 (2014).

11

*Conner-Washington*, 2021 WL 6066789, at *14.

This decision was reasonable. Nothing in the exchange constituted an instruction to the jury that the prosecutor was not required to prove the intent element for murder. Counsel was free to argue from the facts of the case that the prosecutor did not prove that Petitioner possessed the mental state for murder or that she only possessed the mental state for manslaughter. Instead, defense counsel attempted to minimize Petitioner's conduct by comparing it to some other extraordinarily depraved and gruesome murder case. Effectively, the comparison was meant to make the point that the two incidents should not constitute the same crime. The argument was merely rhetorical, though, and not analytical because there was no basis for arguing that the other case constituted an ordinary or paradigmatic example of second-degree murder, let alone the floor for what constitutes second-degree murder. It fell well within the court's discretion to disallow an argument comparing Petitioner's case to another case, the facts of which were unknown to the jury and had no relevance to Petitioner's own trial.

Disallowing the comparison did not infringe on Petitioner's jury trial rights. By sustaining the prosecutor's objection, the trial court did not prevent the defense from otherwise arguing based on the evidence presented at trial that Petitioner did not possess the mental state for murder, nor did it suggest in any way that the jury was not to consider Petitioner's mental state at the time of the crime. Rather, the jury was properly instructed on the mens rea element of second-degree murder, the difference between that crime and manslaughter, and the prosecutor's burden to demonstrate the existence of all the elements of either crime beyond a reasonable doubt. (ECF No. 6-8,

PageID.1068–70.) Petitioner's claim is without merit because it is based on a strained interpretation of the record that was reasonably rejected by the state court. Therefore, her third claim again fails.

As none of Petitioner's claims merit habeas relief, the petition must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. The court will therefore deny a certificate of appealability.

## V. CONCLUSION

IT IS ORDERED that Petitioner's petition for writ of habeas corpus (ECF No. 1) is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENEID.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 22, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 22, 2023, by electronic and/or ordinary mail.

<u>s/Lisa Wagner</u>
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\EKL\Opinions & Orders\Habeas\22-11931.CONNER_WASHINGTON.HabeasPetition.EKL.docx